IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Janis Fuller, individually and on behalf of a class of persons similarly situated, Plaintiffs, v. Frontline Asset Strategies, LLC, LVNV Funding LLC, and Resurgent Capital Services, L.P., Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 17 C 7901 Judge Ronald A. Guzmán |

# MEMORANDUM OPINION AND ORDER

For the reasons stated below, the motion to stay the individual claims, dismiss the class claims, and compel arbitration [15] is granted.

# STATEMENT

**Background**

Plaintiff Janis Fuller applied for and received a credit card from Credit One Bank, N.A ("Credit One"). She ultimately defaulted on the amount owed, and Credit One sold her account, which was ultimately transferred and assigned to LVNV Funding, LLC ("LVNV"). Plaintiff alleges LVNV is a debt collector as defined by the Fair Debt Collection Practices Act ("FDCPA"). (Compl., Dkt. # 1, ¶¶ 13-17.) Frontline Asset Strategies, LLC ("Frontline") was hired to collect the debt. (*Id.* ¶ 25.) On or about November 1, 2016, Frontline sent Plaintiff a collection letter, which she alleges threatened legal action against her that could not be taken, and thus violated various subsections of the FDCPA. *See* 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10). She sues Defendants on behalf of herself and a class of similarly situated individuals. Defendants move to stay the individual claims, dismiss the class claims, and compel arbitration.

**Analysis**

As recently noted by the Seventh Circuit:

> Section 2 of the Federal Arbitration Act "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" It requires federal courts to "place arbitration agreements on an equal

footing with other contracts and enforce them according to their terms." We will compel arbitration under the Federal Arbitration Act "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate."

However, because arbitration agreements are contracts, a "party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Therefore, the general rule is that non-signatories are not bound to arbitration agreements. We will enforce an arbitration agreement against a non-signatory if the party seeking to compel arbitration can show that an exception to this general rule applies.

*A.D. v. Credit One Bank, N.A.*, No. 17-1486, 2018 WL 1414907, at *3 (7th Cir. Mar. 22, 2018) (internal citations omitted). It is undisputed that Plaintiff has refused to arbitrate; thus, the third element has been met.

Enforceable Agreement to Arbitrate. Defendants assert that the terms and conditions of the Cardholder Agreement, Disclosure Statement, and Arbitration Agreement ("Agreement") that governs Plaintiff's account with Credit One, which is now owned by LVNV, prohibits lawsuits and requires binding arbitration. Specifically, Defendants note that the Agreement states, in relevant part:

> This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA or Mastercard Account issued by Credit One Bank, N.A. (The "Account," "Card", or "Card Account"). The words "you", "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," and Credit One Bank refer to Credit One Bank, N.A., its successors or assigns. By requesting and receiving, signing or using your Card, you agree as follows:
>
> **IMPORTANT NOTICE**: Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.

(Answer, Ex. A, Dkt. # 9-1, at 2.)

In addition, paragraph 30 of the Agreement states: "Arbitration Agreement: The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement." (*Id*. at 5.) The Agreement later states as follows:

2

## ARBITRATION

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL**

**Agreement to Arbitrate**:

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

(*Id*. at 6.) Finally, as is relevant here, the arbitration section of the Agreement states that "[t]his arbitration provision shall survive: . . . (iii) any transfer or assignment of your account, or any amounts owed on your account, to any other person." (*Id*. at 7.) Because Credit One sold its right, title, and interest in the account to LVNV, and Frontline agreed to perform debt collection services through Resurgent Capital Services, L.P. ("RCS"), then, under the terms of the Agreement, a valid agreement to arbitrate between Plaintiff and Defendants exists. *Conway v. Done Rite Recovery Servs., Inc.*, No. 14-CV-5182, 2015 WL 1989665, at *4 (N.D. Ill. Apr. 30, 2015) ("[U]nder Illinois law . . . an 'assignee by acquiring the same rights as the assignor, stands in the shoes of the assignor.'") (citation omitted); *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, No. 06 C 0212, 2006 WL 2853830, at *4 (N.D. Ill. Sept. 29, 2006) ("[A] party who is the successor to a party to an arbitration agreement can enforce the arbitration agreement.").

Plaintiff's arguments to the contrary are unavailing. Plaintiff first contends that

"Defendant[1] has not produced a bill of sale with sufficient supporting documentation to prove that it was in fact validly assigned Plaintiff's Credit One account and all rights thereunder." (Pl.'s Resp., Dkt. # 23, at 5.) "A party moving to compel arbitration must 'produce evidence sufficient to support a finding that the [arbitration agreement] is what the proponent claims it is.'" *Conway,* 2015 WL 1989665, at *3 (citations omitted). In the first instance, the Court notes that Plaintiff alleges in her complaint that "LVNV subsequently purchased the alleged debt, and through its servicer Resurgent began collecting the alleged debt from Plaintiff," (Compl., Dkt. # 1, ¶ 24), which constitutes a binding admission. *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995) ("Allegations in a complaint are binding admissions.").

Even without this admission, Defendants have met their burden of demonstrating that the arbitration agreement exists and was validly assigned. Defendants attach to their memorandum in support of their motion an affidavit by Gary Harwood, a Vice President of Credit One, who attests that on or about July 13, 2015, Credit One sold all rights, title, and interest in Plaintiff's account, which were ultimately transferred and assigned to LVNV. (Harwood Aff., Dkt. # 16-1, ¶ 10.)[2] Defendants also attach the affidavit of Amanda Hammond, a paralegal with RCS,[3] whose job functions include serving as a records custodian for LVNV. (Hammond Aff., Dkt. # 16-2, ¶ 1.) Hammond attaches to her affidavit Exhibit A, which is composed of true copies of business records of LVNV relating to its acquisition of Plaintiff's account. (*Id*. ¶ 5.) Hammond's Exhibit A includes the list of receivables that LVNV obtained on July 13, 2015, and Plaintiff's account is on the list. (*Id*.; *id*., Ex. A, Page 8 of 69.) Hammond indicates that LVNV is the current owner of Plaintiff's account, and that LVNV authorized RCS, as its servicer, to retain Frontline to serve as the collection agent for LVNV in connection with Plaintiff's account. (*Id*. ¶ 7.) Defendants have demonstrated the existence of a valid arbitration agreement and its subsequent assignment to LVNV.

---

[1] Throughout her response, Plaintiff refers at certain times to "Defendant" while at other times to "Defendants." The Court assumes that each reference is to all of the defendants relevant to the issue being discussed.

[2] The Court notes that the paragraphs in Harwood's affidavit are misnumbered and cites to the paragraph numbers as they are set forth in the affidavit. Harwood attests that he is a records custodian for Credit One, and "his responsibilities include regularly accessing Credit One's cardholder records and helping to maintain and compile histories of credit card agreements." (Harwood Aff., Dkt. # 16-1, ¶ 4.) He further attests that he is familiar with Credit One's sales of accounts and assets. (*Id*.)

[3] According to Hammond, LVNV is a special-purpose entity that primarily invests in charged-off receivables. (Hammond Aff., Dkt. # 16-2, ¶ 2.) Hammond further states that LVNV has no employees, sends no collection letters, and makes no collection calls; rather, LVNV "engages its corporate affiliate RCS to manage its assets, including providing the services of acting as a records custodian and master servicer for such assets." (*Id*.)

Plaintiff's additional assertion that Harwood's affidavit fails to show that Plaintiff "ever actually signed or received the cardmember agreement" is unavailing. (Pl.'s Resp., Dkt. # 23, at 6.) Harwood attests that Credit One opened a credit card account for Plaintiff on or around May 23, 2008 and mailed the credit card and a copy of the Agreement to Plaintiff at her address on or about May 26, 2008. (Harwood Aff., Dkt. # 16-1, ¶ 8.) Absent any evidence that Plaintiff did not receive the mailing, the Court assumes Plaintiff received it. Moreover, as noted above, requesting, receiving, and using the card, none of which Plaintiff disputes she did, constitutes the cardholder's agreement with the terms stated, including the arbitration provision.

Also unconvincing is Plaintiff's argument that Defendants have waived their right to seek arbitration. To determine whether a party has waived arbitration, the Court considers "whether, based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff points to the fact that in June 2017, LVNV filed a collection action against Plaintiff in state court, but when the action was transferred to mandatory arbitration pursuant to the state court's local rules, LVNV moved to voluntarily dismiss the suit. According to Plaintiff, it is "suspicious, and patently unfair, that *now*, when faced with a federal lawsuit, Defendants seek to compel arbitration . . ." (Pl.'s Resp., Dkt. # 23, at 10) (emphasis in original). The Agreement, however, expressly states that "[f]ailure or forbearance to enforce this arbitration provision at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other claims." (Answer, Ex. A, Dkt. # 9-1, at 7.) Further, Defendants filed the instant motion only three months after the case was filed and less than a month after the initial status hearing. The Court finds no basis on which to conclude that Defendants acted inconsistently with their right to arbitrate.

<u>Dispute Within Scope of Arbitration Agreement</u>. Finally, Plaintiff's contention that her claims fall outside the scope of the arbitration agreement lacks merit. According to Plaintiff, the arbitration provision applies only to claims between Plaintiff and Credit One, and since an FDCPA claim could not have been brought against Credit One because it is not a debt collector as defined by the FDCPA, then the FDCPA claim falls outside the scope of the arbitration provision. But this argument ignores not only that that Plaintiff specifically alleges that LVNV is a debt collector as defined by the FDCPA, (Compl., Dkt. # 1, ¶ 15), but also the sentence in the first paragraph of the Agreement, which states that "[t]he words 'you', 'your' and 'Cardholder(s)' refer to all persons, jointly and severally, authorized to use the Card Account; and 'we,' 'us,' and Credit One Bank refer to Credit One Bank, N.A., *its successors or assigns*." (Answer, Ex. A, Dkt. # 9-1, at 2.) In addition, the arbitration portion of the Agreement expressly provides that "Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors . . . but also Claims for which we may be directly or indirectly liable . . . " (*Id*. at 6.) Moreover, the arbitration portion of the agreement states that claims subject to arbitration include, among other relevant

5

provisions, "disputes relating to . . . collections matters relating to your account. . . ." (*Id.*) Thus, the Court finds that Plaintiff's claims fall within the scope of the arbitration agreement.

**Conclusion**

For these reasons, the motion to stay the individual claim, dismiss the class claims, and compel arbitration [15] is granted.

**Date**: April 11, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**